UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| KYRA G. SHERMAN,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A., alias,<br><br>Defendant. | C.A. No. 26-cv-00258-MSM-PAS |

**DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS PENDING ARBTITATION WITH INCORPORATED MEMORANDUM OF LAW**

Pursuant to the Federal Arbitration Act, 9 U.S.C. §1 et seq. and the arbitration agreement executed by Plaintiff Kyra G. Sherman ("Plaintiff") in connection with her employment, Defendant Wells Fargo Bank, N.A. ("Defendant") hereby submits this Motion to Compel Arbitration and Stay the Proceedings Pending Arbitration.

The facts and law here are straightforward. When Plaintiff began her employment with Defendant, she signed an arbitration agreement in which she agreed that "any legal Claims arising out of my application for employment, employment, or separation from employment with Wells Fargo shall be resolved by final and binding arbitration." (*See* Arbitration Agreement, attached as **Exhibit 1**). As explained in detail below, clear case law requires that the Court stay this action and compel Plaintiff to arbitrate her claims.

## I. FACTUAL BACKGROUND

### A. Plaintiff's Agreement to Arbitrate All Claims Arising Out of Her Employment.

On November 6, 2021, Plaintiff executed an Offer of Employment to begin employment with Defendant. (*See* Signed Offer of Employment, attached as **Exhibit 2**). The November 6, 2021

Offer of Employment included a provision, titled: "Conditions of Employment at Wells Fargo." The "Conditions of Employment" include a clause, stating "[a]ll new hires are required to complete an Arbitration Agreement in which you and Wells Fargo mutually agree to final and binding arbitration of your employment disputes when they cannot be resolved internally." **Exhibit 2**.

That same day, as a condition of her employment with Defendant, Plaintiff executed an Arbitration Agreement.[1] *See* **Exhibit 1**. The Arbitration Agreement states in pertinent part:

> Wells Fargo and I mutually agree that any legal Claims arising out of my application for employment, employment, or separation from employment with Wells Fargo shall be resolved by final and binding arbitration. Except as noted below[2], Wells Fargo and I agree to waive our rights to pursue any claims in court or before a jury. This Agreement is subject to the Federal Arbitration Act.
>
> **COVERED CLAIMS**: The Claims covered by this Agreement…include, but are not limited to, claims for discrimination, harassment, retaliation, tortious conduct, wrongful discharge, breach of contract, promissory estoppel, expense reimbursement, wages, compensation, or claims for violations of any federal, state, or local statute, regulation, or common law, including, but not limited to, Title VII of the Civil Rights Act of 1964, Americans with Disabilities Act, Age Discrimination in Employment Act, Older Workers Benefit Protection Act, Rehabilitation Act, the Equal Pay Act, Worker Adjustment and Retraining Notification Act, Family and Medical Leave Act, the Fair Labor Standards Act, and all applicable amendments.

Following Plaintiff's acceptance of the November 6, 2021 Offer of Employment, Wells Fargo issued Plaintiff a second Offer of Employment on January 4, 2022. *See* **Exhibit 3**. The January 4, 2022 Offer of Employment included the same salary and other material terms. The only change between the two documents, aside from the anticipated start date, was the inclusion of Wells Fargo's COVID-19 vaccine and testing requirements.

---

[1] Plaintiff signed the Arbitration Agreement using Cisive, which is a technology services company that has the functionality to deliver onboarding documents securely and remotely to prospective employees for signature and related authentication. The Cisive technology prompts users to draw their signatures electronically, as reflected in Plaintiff's hand-drawn signature on the Arbitration Agreement, which is tied to her Employee I.D.

[2] The Arbitration Agreement excludes certain claims, which are not at issue in this litigation, namely worker's compensation claims, unemployment compensation benefit claims, and claims for benefits under the Employee Retirement Income Security Act.

The January 4, 2022 Offer of Employment included the same "Conditions of Employment", namely that completion of the Arbitration Agreement was a condition to Plaintiff's employment. Plaintiff signed the January 4, 2022 Offer of Employment using Cisive on January 4, 2022. The Arbitration Agreement Plaintiff signed on November 6, 2021 constituted a standalone contract and therefore, because Plaintiff had already executed the Arbitration Agreement as a condition of employment, she was not required to re-execute the Arbitration Agreement upon her execution of the updated January 4, 2022 Offer of Employment.

Plaintiff's employment was terminated as of April 30, 2024, as part of a reduction in force impacting her department. *See* ECF Doc. 1, Complaint, at ¶ 54.

**B. Plaintiff's Claims Stemming from Her Employment with Defendant.**

On April 28, 2026, Plaintiff filed a Complaint and Jury Demand against Defendant, claiming that Defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"); the Pregnant Workers Fairness Act, 42 U.S.C. § 2000gg-2000gg-6 ("PWFA"); the Rhode Island Fair Employment Practices Act, R.I. Gen. Laws § 28-5-1, et. seq. ("FEPA"); the Rhode Island Civil Rights Act, R.I. Gen. Laws § 41-112-1, et. seq. ("RICRA"); the Federal Family and Medical Leave Act ("FMLA"); and the Rhode Island Parental and Family Medical Leave Act, R.I. Gen. Laws § 28-28-1, et. seq. ("RIPFMLA") when it terminated Plaintiff's employment as part of a broad reduction in force, impacting her team. All the above-listed claims relate to Plaintiff's employment with Defendant and are thus subject to the Arbitration Agreement.

**C. Plaintiff Refuses to Arbitrate, Necessitating this Motion.**

Prior to filing her lawsuit in this matter, Plaintiff, through counsel, sent an initial demand letter to Wells Fargo on June 24, 2024. Following receipt of that letter, Wells Fargo sent Plaintiff's counsel a copy of the signed Arbitration Agreement in August 2024. Following the filing of the

Complaint on April 28, 2026, counsel for Wells Fargo again raised Plaintiff's obligations under the Arbitration Agreement with Plaintiff's counsel in a June 1, 2026 email and subsequent June 4, 2026 phone call in which counsel for Wells Fargo stated that Wells Fargo intended to move to compel arbitration if Plaintiff would not stipulate to arbitration of this matter. Despite his previous receipt of the Arbitration Agreement, Plaintiff's counsel requested that Wells Fargo provide him with another copy of the Agreement. On June 10, 2025, per Plaintiff's counsel's request, counsel for Wells Fargo sent another copy of the executed Arbitration Agreement. Nevertheless, Plaintiff did not agree to Wells Fargo's request that she stipulate to arbitration in this matter.

## ARGUMENT

### A. The Federal Arbitration Act Mandates Resolution of Disputes Through Arbitration.

The Federal Arbitration Act ("FAA") was enacted in 1925 in "response to hostility of American courts to the enforcement of arbitration agreements. To give effect to this purpose, the FAA compels judicial enforcement of a wide range of written arbitration agreements." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001). It codifies "a liberal federal policy favoring arbitration… [and] requires that courts enforce arbitration agreements according to their terms." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (quotations omitted). In evaluating a motion to compel arbitration, the Court must determine whether: "(i) there exists a written agreement to arbitrate, (ii) the dispute falls within the scope of that arbitration agreement, and (iii) the party seeking an arbitral forum has not waived its right to arbitration." *Combined Energies v. CCI, Inc.*, 514 F.3d 168, 171 (1st Cir. 2008). Only if all three factors of the test are satisfied will a motion to compel arbitration be granted. *Id.*

The party opposing arbitration ultimately bears the burden of proving the claims at issue are unsuitable for arbitration. *See Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91

(2000). Therefore, when courts analyze the existence and scope of an arbitration agreement, there is a "presumption in favor of arbitrability." *Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141, 150 (1st Cir. 1998), *overruled on other grounds by Smith v. Spizzirri*, 601 U.S. 472 (2024). Further, courts are required to compel arbitration "upon being satisfied that the making of the agreement for arbitration . . . is not in issue." 9 U.S.C. § 4.

Defendant easily establishes all three prongs, and therefore the Court should grant its Motion to Compel Arbitration.

***1. A Valid Agreement to Arbitrate Exists.***

Plaintiff executed a mandatory, written arbitration agreement with the Defendant. To determine whether a valid arbitration agreement exists between Plaintiff and the Defendants, federal courts apply ordinary state law principles governing the formation of contracts, "but with due regard to the federal policy favoring arbitration." *PaineWebber Inc. v. Elahi*, 87 F.3d 589, 600 (1st Cir. 1996) (quotation omitted).

Under Rhode Island law, "a valid contract requires competent parties, subject matter, a legal consideration, mutuality of agreement, and mutuality of obligation." *Britto v. St. Joseph's Health Servs. of R.I.*, 2018 U.S. Dist. LEXIS 67618, at *3 (D.R.I. April 23, 2018), *aff'd Britto v. Prospect Chartercare SJHSRI, LLC*, 909 F.3d 506 (1st Cir. 2018).

The Parties' Arbitration Agreement satisfies these minimal requirements. Defendant presented the Arbitration Agreement as a condition of Plaintiff's employment, and Plaintiff accepted the agreement by signing on November 26, 2021. Plaintiff's execution of her January 4, 2022 Offer of Employment required as a condition of her employment her execution of the Arbitration Agreement, which as a standalone agreement remained valid. Her agreement to arbitrate employment claims is also well supported by consideration: Defendant not only made a reciprocal promise to arbitrate employment disputes, but also provided Plaintiff with continuing

employment. *See Britto*, 909 F.3d at 514 (holding continued at-will employment constitutes valid consideration for arbitration agreement). These factors unquestionably establish a valid agreement to arbitrate.

#### 2. *Plaintiff's Claims Fall Squarely Within the Scope of the Arbitration Agreement.*

Plaintiff's claims also fall squarely within the scope of the Arbitration Agreement. In making this determination, the FAA requires courts to apply a presumption in favor of arbitrability. *See Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1, 8-9 (1st Cir. 2014) (reasoning that the presumption of arbitrability is particularly appropriate where the arbitration clause is broadly worded). Plaintiff ultimately bears the burden of proving that her claims do not fall within the scope of the Arbitration Agreement. *See Green Tree Fin. Corp.-Ala.*, 531 U.S. at 91 ("[A] party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration.") (internal citation omitted). To meet this burden and overcome the strong public policy favoring arbitration, Plaintiff faces a steep challenge. She must show "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960).

In this case, Plaintiff cannot dispute the fact that her claims fall within the scope of the Arbitration Agreement. In Plaintiff's Complaint, she pleads claims for discrimination and retaliation under Title VII, the PWFA, FMLA, and their state law counterparts. Under the Arbitration Agreement, Plaintiff agreed "to arbitrate any legal Claims arising out of [her] application for employment, employment, or separation from employment with Wells Fargo." *See* **Exhibit 1**. This language, alone, is sufficient to encompass Plaintiff's claims under the FAA. *See AT&T Techs v. Communs. Workers of Am.*, 475 U.S. 643, 650 (1986) (determining that where the clause is broad, "only the most forceful evidence of a purpose to exclude the claim from arbitration

can prevail"); *see also Proulx v. Brookdale Living Cmtys. Inc.*, 88 F. Supp. 3d 27, 33 (D.R.I. 2015) (finding plaintiff's RICRA, FEPA, and Civil Rights of People with Disabilities Act claims fell within scope of arbitration agreement, requiring arbitration for "any claim arising out of or relating to" his employment, including wrongful discharge claims). For these reasons, Plaintiff's claims are clearly covered under the Arbitration Agreement and she should be compelled to arbitrate his claims.

***3. The Right to Arbitrate Has Not Been Waived.***

Defendant has not waived its right to arbitration in this matter. Plaintiff bears the burden of proving that Defendant waived its right to arbitrate through its litigation conduct. *See Toddle Inn Franchising, LLC v. KPJ Associates, LLC*, 8 F.4th 56, 64 (1st Cir. 2021). There is a strong presumption against inferring waiver, and any doubt about waiver of the right to arbitrate is resolved in favor of a non-waiver of arbitration. *See Buruk v. Experian Info. Sols., Inc.*, 732 F. Supp. 3d 165, 171 (D. Mass. 2024), *quoting Toddle Inn*, 8 F.4th at 64. The court considers the following factors in determining whether waiver has occurred: (1) whether the parties participated in a lawsuit or took action inconsistent with arbitration; (2) whether the parties are well into the lawsuit by the time intent to arbitrate is communicated; (3) whether there has been a long delay and trial is imminent; (4) whether party seeking to compel has invoked the court's jurisdiction by filing a counterclaim; (5) whether discovery not available in arbitration has occurred; and (6) whether the party asserting waiver has suffered prejudice. *See FPE Found. v. Cohen*, 801 F. 3d 25, 29 (1st Cir. 2015).

Here, since the filing of the Complaint, Defendant's sole action has been to pursue arbitration. Defendant has not otherwise participated in the lawsuit or taken any other action that may be considered inconsistent with its right to arbitrate. Accordingly, Defendant has not waived its right to arbitrate Plaintiff's claims. *See Buruk*, 732 F. Supp. 3d at 171 (finding no waiver of

right to arbitration despite defendant waiting nine months after suit was filed, failing to raise arbitration agreement as an affirmative defense in its answer, and the parties having exchanged initial disclosures and propounded discovery requests).

**B. The Court Must Stay the Case Pending the Outcome of Arbitration.**

Section 3 of the FAA requires that where issues brought before a court are arbitrable, the court "shall…stay the trial of the action until such arbitration has been had in accordance with the terms of the [arbitration] agreement." 9 U.S.C. § 3. Indeed, requiring the Defendant to participate in this lawsuit even though none of Plaintiff's claims against them can be resolved in this forum would effectively deprive the parties of their rights under the Arbitration Agreement – thus frustrating national policy favoring the resolution of disputes in arbitration. Accordingly, the Court should stay all proceedings pending the outcome of arbitration, pursuant to 9 U.S.C. § 3; *see also Smith*, 601 U.S. at 478-479 ("[i]f there were any doubt, the FAA's structure and purpose confirm that a stay is required.").

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court enter an Order compelling Plaintiff to proceed to arbitration on her claims in accordance with her agreement to do so and staying this proceeding until arbitration has been completed.

Respectfully submitted,

Defendant,

WELLS FARGO BANK, N.A.,

By its attorney,

/s/ *Benjamin R. Davis*
Benjamin R. Davis, BBO# 8260
JACKSON LEWIS P.C.
75 Park Plaza — 4th Floor
Boston, MA 02116
T: (617) 367-0025
F: (617) 367-2155
benjamin.davis@jacksonlewis.com

Dated: September 10, 2026

**LR CV. 7(C) STATEMENT**

Oral argument is not requested.

**CERTIFICATE OF SERVICE**

I hereby certify that on September 10, 2026, a copy of the foregoing document was served through the court's electronic filing system.

/s/ *Benjamin R. Davis*
Jackson Lewis, P.C.

4917-7665-1458, v. 3