UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| KYRA G. SHERMAN,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A., alias,<br><br>Defendant. | C.A. No. 26-cv-00258-MSM-RLA |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS PENDING ARBITRATION**

Defendant Wells Fargo Bank, N.A. ("Defendant" or "Wells Fargo") hereby submits this Reply in support of its Motion to Compel Arbitration and Stay the Proceedings Pending Arbitration and in response to Plaintiff Kyra Sherman's ("Plaintiff") Objection to Defendant's Motion to Compel Arbitration and Stay the Proceedings Pending Arbitration (the "Response").

## INTRODUCTION

Plaintiff does not dispute that she signed a valid and enforceable *Mutual Arbitration Agreement* ("Arbitration Agreement") in connection with her employment with Wells Fargo. Rather, Plaintiff's argument rests entirely on the proposition that the offer letter she signed on January 4, 2022 ("January Offer Letter") superseded the separate Arbitration Agreement she signed a month earlier. The critical flaw in Plaintiff's argument is that the January Offer Letter expressly lists the Arbitration Agreement as part of the Parties' agreement and identifies its execution as a requirement of her employment.

## ARGUMENT

### I. The Parties' Valid, Binding Agreement Unambiguously Incorporated the Arbitration Agreement

At 9:05 a.m. on November 26, 2021, Plaintiff accepted an offer of employment ("November Offer Letter"), which stated that "[a]ll new hires are required to complete an Arbitration Agreement." (*See* ECF No. 8, at Ex. 2). Consistent with her understanding of this obligation, at 9:12 a.m. on the same day Plaintiff signed the Arbitration Agreement in which she and Defendant "mutually agree[d] that any legal Claims arising out of [Plaintiff's] application for employment, employment, or separation from employment with Wells Fargo shall be resolved by final and binding arbitration." (*See* ECF No. 8, at Ex. 1). After Wells Fargo changed Plaintiff's start date, it reissued Plaintiff's offer on January 4, 2022 for the same position, with the same manager, the same office, and the same compensation structure, adding only COVID-19 protocols and confirming date changes. That updated letter confirmed that the parties' entire agreement consisted of: 1) the offer letter, including the Conditions of Employment attached to the offer letter, 2) "the Trade Secrets Agreement," and 3) "the Arbitration Agreement." The only Arbitration Agreement then in existence between the parties was the one Plaintiff had signed a month earlier. (*See* ECF No. 8, at Ex. 3). The January Offer Letter also repeated word-for-word the November Offer Letter's requirement that the Arbitration Agreement be executed and that "[b]y signing and submitting this offer letter, you accept and agree to all terms and conditions of this offer of employment." (*See* ECF No. 8, at Ex. 3).

Plaintiff argues that the Arbitration Agreement can only bind Plaintiff if the January Offer Letter incorporates it by reference. That is precisely what occurred here. The January Offer Letter identifies "the Arbitration Agreement," using the definite article and capitalized title, and describes it as an agreement "in which you and Wells Fargo mutually agree to final and binding arbitration

of your employment disputes." That description matches the Arbitration Agreement exactly. It is titled "Wells Fargo Mutual Arbitration Agreement" and opens, "Wells Fargo and I mutually agree that any legal Claims arising out of my application for employment, employment, or separation from employment with Wells Fargo shall be resolved by final and binding arbitration." (*See* ECF No. 8, at Ex. 1). Any reasonable person in Plaintiff's position, who had signed that Arbitration Agreement a month earlier as part of onboarding for the same job, would have understood "the Arbitration Agreement" to mean the Arbitration Agreement.[1] *See Schofield v. French*, 36 F. Supp. 2d 481, 486 (D.R.I. 1999) ("Explicit reference in the contract to a document puts reasonable person on notice that they should read it and know its terms.").

This explicit reference to the Arbitration Agreement remaining a part of the parties' entire agreement makes the case law relied upon by Plaintiff inappropriate. For instance, in *Mgmt. Capital, L.L.C. v. F.A.F., Inc.*, 209 A.3d 1162, 1175 (R.I. 2019), the contracting parties had merely set a price based on a formula contained in another instrument, without expressing <u>any</u> intention to incorporate the instrument into their agreement. Plaintiff also misreads *Dulong v. Merrimack Mut. Fire Ins. Co.*, 272 A.3d 120, 127 (R.I. 2022), as establishing a rigid specificity requirement for incorporation by reference in the non-insurance context. The Court in *Dulong* considered whether incorporation by reference is ever acceptable in the insurance context when many jurisdictions require all endorsements to insurance policies to be <u>both</u> attached and referenced. *Id.* The Court did not hold that incorporated agreements be identified using specific naming

[1] Plaintiff argues that because the January Offer Letter says new hires "are required to complete an Arbitration Agreement," the letter contemplated a future, not-yet-signed agreement. The sentence states a requirement, which Plaintiff satisfied on November 26, 2021. A condition that has already been satisfied does not need to be satisfied twice. Nor does Wells Fargo seek to "have it both ways," as Plaintiff alleges. Wells Fargo's position has been clear: execution of the Arbitration Agreement was a condition of Plaintiff's employment, which Plaintiff satisfied, and the January Offer Letter confirmed it remained part of the parties' entire agreement.

conventions. Rather, they simply must be referred to in a manner that "demonstrates the parties intended to incorporate…the referenced instrument." *Id.* at 127 (quotation omitted).

There is an express reference to "the Arbitration Agreement" in the January Offer Letter, which goes on to describe the Arbitration Agreement with identical language that was used in the November Offer Letter and include language directly from the Arbitration Agreement. (*See* ECF No. 8, at Ex. 2, 3). The January Offer Letter therefore plainly demonstrates an intent to incorporate the Arbitration Agreement. *See Mgmt. Capital, L.L.C. v. F.A.F., Inc.*, 209 A3d 1162, 1175 (R.I. 2019) (outlining standard for incorporation requires language demonstrating intent of parties to incorporate referenced instrument); *Dulong*, 272 A.2d at 127 (finding separate instrument incorporated into agreement where reference to instrument contained some of the language found in the instrument).

## II. <u>The January Offer Letter Did Not Supersede the Arbitration Agreement</u>

Even if the January Offer Letter had not incorporated the Arbitration Agreement, it would remain enforceable. Defendant has satisfied its burden of demonstrating that the parties entered into a binding agreement to arbitrate under Rhode Island law. The Arbitration Agreement does not tie itself to a specific offer letter, does not state that it expires should a new offer letter issue, and Plaintiff concedes the Arbitration Agreement did not expire when she failed to commence employment under the November Offer Letter.[2] The Arbitration Agreement also notes that Plaintiff's employment remained at will, and its terms encompass any claims arising from Plaintiff's "application for employment, employment, or separation from employment," reaching

---

[2] Plaintiff contradicts her position in multiple points. She argues that the Arbitration Agreement (1) relied on the existence of the November Offer Letter; and (2) was not a standalone agreement that survived outside the November Offer Letter. However, she acknowledges that the Arbitration Agreement did not lapse "merely because the November Offer Letter lapsed." Where Plaintiff concedes that the Arbitration Agreement survived the lapse of the November Offer Letter, she cannot also argue that the Arbitration Agreement was not a standalone agreement.

every stage of the relationship regardless of Plaintiff's employment start date. (*See* ECF No. 8, at Ex. 1). *See Pelletier v. Yellow Transportation, Inc.*, 549 F.3d 578 (1st Cir. 2008) (declining to merge arbitration agreement with employment application because agreement "not contingent on any offer of employment being extended" and applied "regardless of the status of [plaintiff's] application or her employment with [defendant].").

Plaintiff fails to establish that the parties intended the January Offer Letter, which merely changed her start date and added COVID-19 protocols, to supersede the Arbitration Agreement. Indeed, the execution of the Arbitration Agreement was a consistent condition of both the November Offer Letter and the January Offer Letter.[3] (*See* ECF No. 8, at Ex. 2, 3). Plaintiff's own cited authorities confirm that supersession occurs only where a later agreement "contain[s] terms inconsistent with the former contract, so that the two cannot stand together." *See Biller v. S-H OpCo Greenwich Bay Manor, LLC*, 961 F.3d 502, 515 (1st Cir. 2020) (quotation omitted) (finding arbitration agreement not extinguished where parties did not sign "new arbitration-clause-free contract with clear and definite intent to entirely supersede the [prior agreement] including the arbitration clause" [internal quotations omitted]).

Similarly, in *Metcalf v. Greico Hyundai LLC*, 698 F. Supp. 3d 239, 242 (D.R.I. 2023), on which Plaintiff also relies, the parties initially entered into a Lease Agreement that contained a class action waiver and then later entered into a new contract with an integration clause that did not contain a class action waiver. *Id.* Here, there is nothing inconsistent between the November and January Offer Letters with respect to the Arbitration Agreement requirement. *See Boston Exec. Helicopters, LLC v. Maguire*, 45 F.4th 506, 515 (1st Cir. 2022) (finding prior agreement between parties remains in effect despite integration clause in subsequent agreement relating to

[3] The integration clause in the January Offer Letter does not state that it supersedes all prior agreements between the Parties.

same subject matter "if the agreement is not inconsistent with the integrated contract, and is made for separate consideration" [quotations omitted]).

Plaintiff's reliance on the unpublished and nonprecedential decision in *Frank v. 84 Components Co.*, 2002 U.S. Dist. LEXIS 11218 (S.D. Ind. June 18, 2002) is also misplaced. In *Frank*, the employee was terminated, separated from the company, and then rehired with hiring documents that <u>made no reference whatsoever</u> to arbitration. *Id*. at *3. In finding the original arbitration agreement had been superseded, the court relied on the fact that the employer had come forward with no evidence that the employee should have interpreted as an agreement to arbitrate when hired the second time. *Id*. at *7. Here, even Plaintiff concedes that, "[u]nlike the rehire documents in *Frank*, the January Offer Letter mentions 'the Arbitration Agreement.'" (*See* ECF No. 8, at Ex. 3).

### III. <u>Defendant Did Not Waive Its Arbitration Condition of Employment</u>

Plaintiff's last resort is to argue that the January Offer Letter superseded the Arbitration Agreement and then waived it by not having her re-sign it. This borders on nonsensical. Nothing in either offer letter required the documents to be signed in a particular order. They simply stated that the Arbitration Agreement was a condition of employment. (*See* ECF No. 8, at Ex. 3). Because Plaintiff had already signed the Arbitration Agreement at the time she signed the January Offer Letter, she had already satisfied that condition of employment.

Waiver requires the "voluntary, intentional relinquishment of a known right." *Haxton's of Riverside, Inc. v. Windmill Realty, Inc.*, 488 A.2s 723, 725 (R.I. 1985). Declining to require an employee to re-execute a document she signed just over a month prior, which is expressly referenced in the updated offer letter is the opposite of a relinquishment of the right to arbitration.

**CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that this Court enter an Order compelling Plaintiff to proceed to arbitration on her claims in accordance with her agreement to do so and staying this proceeding until arbitration has been completed.

Respectfully submitted,

Defendant,
WELLS FARGO BANK, N.A.,
By its attorney,

/s/ *Benjamin R. Davis*

Benjamin R. Davis, BBO# 8260
JACKSON LEWIS P.C.
75 Park Plaza, 4th Floor
Boston, MA 02116
T: (617) 367-0025
F: (617) 367-2155
benjamin.davis@jacksonlewis.com

Dated: November 2, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on November 2, 2026, a copy of the foregoing document was served through the court's electronic filing system.

/s/ *Benjamin R. Davis*
Jackson Lewis, P.C.